Good morning, Your Honors. Andrea St. Julian on behalf of the plaintiff and appellant Juan Albino, and I'd like to reserve six minutes for rebuttal. The Los Angeles Men's Central Jail has absolutely no method by which it informs inmates that it has a formal grievance procedure. It gives inmates absolutely no orientation, and it provides them with absolutely no written materials. And I'd like to first direct the Court's attention to the Division Custody Manual. Counsel, is that in the record, that they don't provide an orientation? I have the same questions, and no written materials. Or is that something that we understand because Albino said, I didn't get anything, and because the officers who provided declarations didn't affirmatively say, we give them an orientation and we provide them with written materials. Did anybody actually say, we don't do this from the county? The defendant never actually, I don't think. It may be an inference by attaching a couple of things together, but I want to know whether anybody from the county actually said that. It would not inure to their benefit to actually say it, so they did not. However, Mr. Albino has been very clear at ER 74 and also 85 that there is no orientation, there absolutely are no written materials. He can only speak to his own experience. He can't speak to anybody else's experience. But we patch that together with what the officer said, we may be able to draw that inference. But it is a bit of an inference and not sort of direct evidence. Your Honor, I would disagree a little bit. The defendant has never claimed that it gives any type of orientation. It has never claimed that it provides any type of written material or even has any written material. And that's why I want to direct the Court's attention back to the Division Custody Manual, which the defendant has proffered. There is some confusion in, I think, the vacated opinion. That Division Manual is an employee handbook. It is not an inmate handbook. At no point did Mr. Albino have any access to the employee manual, and nowhere does the defendant even claim that Mr. Albino had any access to this employee manual. Counsel, is there anything in the record that indicates that that manual is available to an inmate if the inmate knows of it and requests it? No. At no point did the defendant say, we would allow him to look at an employee manual. And that also is not particularly reasonable. The jails don't give out employee manuals to their inmates, and they did not in this case. And they have never alleged that Mr. Albino ever had an opportunity to look at that. And Mr. Albino also specifically said that the custody division manual is not located in the jail's library. And that manual, as I understand your position, is the only manual to which Sheriff Baca makes references containing the grievance procedure. Is that correct? Absolutely. And that is the only reason why the defendant proffered it, just to show that the grievance procedure existed. He never proffered it to show that Mr. Albino had any access to it. Ms. St. Julian, is there any evidence in the record as to the size of the jail operations in Los Angeles? It's my understanding from other cases that there are multiple jail facilities, and that on any given day you can have as many as 10,000 inmates on buses moving between courts and jails in Los Angeles County. I believe the defendant has in its filings referenced the size of the Men's Central Jail, yes. This is the biggest jail out of all, what, 19 or 20 of them in the county? It is perhaps one of the largest facilities in the world. Is it the one near County USC? I'm sorry? Is it the one near County USC? I'm not sure, Your Honor. The big one? The big one. Men's Central Jail, I believe, is the largest one. But, of course, the defendant would have more information on it. What happens if we go down a somewhat different route, and let's say they did have a procedure, but it so happens your client didn't get the benefit of it. He fell through the cracks somehow. So they have a procedure to inform inmates and so on. They have an orientation. Somehow he got left out. Does that, if we go down that avenue, is that fatal to your case? No, it would not be fatal to my case. Although, I want to reiterate, there is absolutely nothing in this record to indicate that there is any. I got that. I got that, Fox. That's why I asked you this question. But, no. We heard it, you know. Let's walk down the other avenue. Okay. It would not be fatal. And the reason why it wouldn't be fatal can be shown in other cases, other procedures used by other facilities as referenced in the cases in the briefing. Most facilities have some way of ensuring that each inmate knows and doesn't know. And they usually have the inmate sign something saying that they've received the orientation, they've been through the orientation, and they've received the written material. Mr. Albino shouldn't fall through the cracks, because there should be some reference showing that he has either received it or not received it. If he did not receive it, and if under all of the circumstances, it is reasonable that he did not know a grievance procedure existed, then the grievance procedure should, or, excuse me, the ---- And what do you rely on for the, I mean, it has a certain common sense appeal. Sure. But there's no case saying that as far as I know, is there? Certainly not from our court, but there's no circuit appeal from any other circuit. Usually they rely on some sort of affirmative misleading. Okay. Which also did occur in this case. I understand. That's the third ---- Okay. But I just want to explore these roads one at a time. Sure, sure. So we're now down the road where nothing is said to that's misleading. I realize there are things where you can argue the word, but let's say that's not the case. And perhaps there is a procedure we don't know, but he does not personally get the benefit of it. What's your best case supporting? I think the Hempsville case that is cited in the materials would probably be the best case discussing that you look at the particular circumstances of the inmate to determine whether his actions were objectively reasonable. And if I may, Your Honor, in addition to the lack of written materials, there is reference in the ---- The thing that worries me just a little bit is this just a little bit different than what I heard the first time. It seemed to me in the first hearing that you admitted there was a grievance procedure, that there is one that exists, and you admitted it further that your client didn't follow the procedure. Yes, Your Honor. Is that true? Oh, there is no dispute that the jail does have a grievance procedure. And that your client did not follow the procedure. He did not know about it, so no, he did not follow it. So if I take the cases and I see if there is a ---- what the jail has to do to establish an affirmative defense, what they need to show with their burden, they need to show that, one, a grievance procedure existed, and two, your client did not follow the procedure. So if you admit that, then the burden falls on you. And that's where we were the last time I talked to you. I said, okay, you've admitted a grievance procedure existed. You've admitted that your client did not use the procedure. Now, what evidence do I have? Because you have certainly a sympathetic plaintiff. Give me some evidence that your client did something to make use of the procedure. I mean, that's the word. What good faith effort did he undertake? He undertook quite a bit of good faith effort. First, give me the evidence. What good faith effort did he undertake? If I may start out, Your Honor, my client does not have the burden of proof on this affirmative defense. Well, I understand the first prong, the government has the burden. But once establishing, as I understand the rules as laid out in Haleo, once establishing a grievance procedure existed and your client didn't follow the procedure under Haleo, then the burden shifts to you to say it was unavailable. If I can reference the case of Brown v. Zala, which shows that it is the defendant's burden to prove that the grievance procedure is available. That burden does not lie with my client. Well, I guess when you say it exists and your client didn't follow it, then I read the cases, and let's just skip, we'll have a little bit of a disagreement. Is there any evidence here that your client undertook any good faith effort to use the procedure? Oh, absolutely, absolutely. What? The first thing my client did, he said he begged 10 times or so to the staff asking for, that he be put in protective company, a custody. At no point did any of the staff tell him that a grievance procedure existed. What did they tell him? They told him that. He should see his attorney. They told him repeatedly, different staff repeatedly told him that his attorney was the only person who could help him. And so as a result of that, he went to his attorney several times asking his attorney for help. He and his attorney both went into the criminal court. We don't have any evidence that his attorney did anything, do we? Mr. Albino testified to that several times. He says it at ER 85 as well as at SER 23. I guess my worry is this. I read Sapp. It seems to me that if I read Sapp and Nunes, then I have to find that somehow the jail undercut his way to get there. The jail said, go get your attorney, do what you need to do. If I read Gobert, which is outside in the 11th Circuit, I find that he could not have discovered the correct procedure even with reasonable effort. And so really, the last time I was here and we talked about it, he said, I can't find any evidence here that he undertook any reasonable effort to find this procedure except made oral complaints to guards. And, Your Honor, let me just also, he spoke to his public defender. That's also found at ER 28, 161 and SER 23. Was the public defender's fault? Well, no. It was the guard's fault by misdirecting him. Instead of, as the employee handbook, the custody division manual said, every single member, jail staff, personnel, they have to know about the grievance procedure. And instead of telling Mr. Albino, the ten times or so he begged for some kind of relief, instead of telling him there's a grievance procedure, all you need to do is request a grievance form and fill it out, instead they misdirected him to his public attorney who knew nothing about this procedure. And we know that because the public defender never told him that it existed. And so Mr. Albino did everything he could. There's nothing in the record about any conversations between he and his public defender, is there? He does say that he spoke to his public defender about the issue as directed by jail staff. But there's nothing in there that the public defender didn't know or the public defender didn't tell him or any of that? Yes. Mr. Albino does say that his public defender did not tell him. Counsel, can I ask you to back up just one second? Sure. Because I don't think I agree with my brother here in terms of the burden that is on the defendant, what the defendant has to initially show. So let's say I'm with you that it's not enough for the defendant just to come in and say, hey, there's this remedy or this procedure that exists, right? And you would say that, no, you have to show something more. How would you articulate the something more that the defendant has to show? The defendant has to show that it was unreasonable that Mr. Albino didn't know that the grievance procedure existed. For example, and at every point the defendant fails. For example. Just a clarification. So you're using an objective standard? Oh, absolutely. Absolutely. We have always established an objective standard. For example. Reasonable inmate? Yes. I mean, excuse me, but when you have an objective standard, you have to come up with a point of view. Sure. Well, the point of view, as Hensel actually discusses, is you have to look at the circumstances of the particular defendant. But it still is an objective standard. It's not that he said, I didn't know. I wasn't subjectively aware of it, even though everybody else around him knew it. Yeah. It's under the circumstances whether he should have known or not. Exactly. Exactly. Can I just direct your attention back to the statute? And I guess the word is available, such administrative remedies as are available. How would we define available for your client to prevail? What would the meaning of that word be? Well, in the simplest of terms, it would be that he was told that it exists or that he had some means of knowing that it exists. And he didn't have any means of knowing. So you would say that available means that the person was informed of the existence of the remedy. Is that your definition? Informed or had some way of knowing. And on this record, not only was he not informed, he had no way of knowing. I thought he didn't ask. I thought the record showed he never specifically asked, do you have a grievance procedure. Is that correct? No, he did not specifically ask that. And common experience. You can't say he had no way of knowing, right, because he never asked the question. That presupposes that the average reasonable person would know to ask, do you have the grievance procedure that I don't know about? If your common experience doesn't allow you to know that there may be something as such as a formal grievance procedure, then you don't even know to ask. And that's one important point I really want to point out, Your Honor. The California state prison system not only has a grievance procedure, but it has an orientation where it tells the inmates, it tells the prisoners about the grievance procedure and it also gives its written materials. So does your definition collapse into he has to be informed, the individual has to be informed, because your assumption is that a person otherwise would not know? Not necessarily, Your Honor. It depends. And if I may finish with the example of the state prisoners, there could very easily be many inmates at the jail who have been in California state prisons. Those inmates, because they've been given an orientation and written materials while they were in the state prison, they're going to have some idea that there might be a grievance procedure. So is it not entirely an objective test, then? You're saying it could be for one person, it could be he must be informed, and for another person that wouldn't be part of the definition of available? I would not define that as not being objective. It is still objective, but you look at the particular circumstances of the particular inmate. And, again, the problem becomes at mentioning. Does the record reflect what Mr. Albino's experience is with either the jail or prison system? Yes, there is absolutely no indication at all that he had ever been incarcerated before. And, see, this is the problem that happens. I mean, presumably the defendants have access to his prison records. Yes, and I am unaware that he, I do not believe he was ever incarcerated before. And the record does not reflect that he does. So what happens at the men's central jail is there's a two-tiered system. You have inmates there who are former guests of the state prison system. That's a delicate term. They have some idea that a grievance procedure might exist at the jail. So those more hardened criminals have some idea to ask for a grievance form. Well, Ms. St. Julian, I thought there was testimony from Deputy Kevin Kinney that there were complaint forms in boxes that were located in the common housing areas of the jail where these assaults occurred. Actually, I think that conflates two different things. If I may pull them apart, Your Honor. Well, it's A, there are boxes, and B, where are they located? There is one box in each housing unit. And the assault occurred in the housing unit, did it not, in the common area? Your Honor, I am unsure exactly where the assault occurred. Aren't the incident reports in the record? Yes, the two incident reports and two injury reports are in the record. So why can't I conclude from reading that record, or as the district court did, since he said there were no contested issues of material fact on this point, that there actually were forms in boxes in the housing unit where Albina was housed? Two things, Your Honor. One, with respect to the request forms. The request forms are not just generally out and available. As Mr. Albina states, they're not even in the jail library. They are only available upon request. You have to ask a jail staff member for a grievance form in order to receive it. They're just not lying about so that an inmate can get them. Again, is there a staff member in the housing unit at the jail? And if that staff member refuses to tell you that the grievance procedure exists when you beg to be put into protective custody, you still don't know to ask for a grievance form. I'm confused. Judge Tallman asked you a question about the evidence and suggested that there were boxes of grievance forms, or at least a box. And I thought you said yes. Is that incorrect? There are boxes to receive the complaint forms, and there are complaint forms. There are complaint forms. There are complaint forms that are only available upon request. Okay, so you couldn't see them. If I were Mr. Albino and I were walking down the hall, I could not see a box with complaint forms. No. The complaint forms, although the record indicates they are throughout the facility, they are kept by the jail staff. Okay, so are you then, you know, we have a case, Nunez v. Duncan. Yes. In which exhaustion was excused because, basically, of the affirmative misleading of inmates by prison officials. Is that really the thrust of your case here? It's one of the thrusts. The jail undertook many actions, and one of them was to actively mislead him by directing him to his attorney. But just a minute. On the issue we're really talking about, there's just absolutely no evidence in this record that your client ever asked for a form and was misled. He did not. There's no evidence about that. If you're going to say misleading, the only thing you can say is when he complained about his problems to the jail, they didn't tell him about this process. They instead told him to talk to his attorney. But there's no evidence in here that he asked that person who was supposed to give the form, which is a little bit different factual record than I had when I had this case, and they wouldn't tell him about it or they didn't give it to him. There is no evidence here that he took any step to discover and pursue this remedy, other than visiting with the guards about how I'd like to go someplace else. Isn't that correct? I would slightly disagree, Your Honor. Tell me how you would disagree. I would disagree. One, he did not request a form. How do you request something that you don't even know exists? He wouldn't know to ask for it. The boxes are there, right? I'm sorry? The boxes are there. They're visible in the housing unit, aren't they? Thank you, Your Honor. One, there's only one in the housing unit, and two, the record doesn't reflect that they are labeled in any way. It is just a box. There is nothing about simply the presence of a box, which not only is there no indication that it was labeled, there's no indication in the record that it was labeled in any way to inform the inmates of its purpose. Again, this is sort of the absence of evidence from the county that you're inferring that it's not labeled. Your Honor, the MedCentral Jail is one of the largest correctional facilities in the world, and they have great attorneys, at least four or five of whom have been in this court. They know exactly how to write a declaration. Let me ask you this, if I may, over here. Is it possible that Mr. Albino thought at one time that he had actually complied with the grievance procedures in the form complaint that he initially files? He checks the box, and the box says, is the grievance procedure available? Yes. Have you filed a grievance? Yes. Has the grievance procedure completed? Yes. Now, there's no narrative. It's just checking boxes, and the handwriting is not his. It's in English and so on, so he obviously didn't prepare this. On the other hand, I'm assuming that he was talked to as this was being prepared. Yes. From your narrative, based upon what he says, it seems to me possible that he thought, having gone to the guards, asked for a transfer, having been told by the guards that he needs to talk to his attorney, his attorney does things, he thought he did it. Yes. And there's one more thing. Is that it, or is it because he got moved twice to different housing units after he talked to the guards? Well, actually, no, Your Honor, that is not the reason. But isn't that the record? Wasn't he, in fact, moved twice? Isn't that true? It's a yes or no question, counsel. Yes, he was moved. Thank you. But he was not moved into protective custody, and in spite of being moved twice, he was also repeatedly assaulted. But my question is, why wouldn't it be reasonable on this record to infer that when he said he invoked the grievance procedure, that's what he was referring to, and talked to the guards and they moved him twice? If I may answer Judge Fletcher's question first, yes, my client did believe he had done everything that he could, and there is also an additional reason why he thought he did everything that he could. Injury reports were prepared after each of the first two assaults. He participated in the preparation of those reports, and he gave a written statement in those jail reports in his own hand. So he was fully aware that these reports were being prepared for the jail staff, and that, along with what else he was told by the jail staff, led him to believe he had undertaken all the process that he could in the jail. And with respect to his attorney, what he says is that I talked to my attorney, or my attorney on my behalf, with him to court to get him medical care, not to get him the transfer. Yes, yes. And whether or not it was fully successful in achieving his aims, it seems to me that if he thinks he's exhausted the remedies, that is to say he's done what the guards told him to do, he talked to his attorney, his attorney did something, and how effective his attorney might or might not have been in achieving that is irrelevant in some sense as to whether or not he thought in good faith that he'd complied with the procedures he was supposed to follow. Yes, he did everything he was told to do. And also, Your Honor, even the implication that he didn't do everything that he could is defied by what happened to Mr. Albino. Mr. Albino was so brutally attacked and raped on three occasions that he is partially deaf and blind on a permanent basis. He received broken bones all over his body. He was very badly cut and received nerve damage. He was fighting for his life to try to get into protective custody. Let me ask you a question, if I can, over here. I'm talking about this other hand. Because your client argues he was objectively reasonable in not knowing about the jail grievance reports or grievance process on the one hand. On the other hand, I thought there was somewhere in the record that he said he tried to submit a grievance in writing and was threatened as a result. Can you reconcile those? Yes, yes. He tried to seek help by trying to mail out something. It's unclear in the record who he tried to mail it to or exactly what was said. And they threw that back in his face. He never at any point said, oh. That's not in the record. That was stricken, was it not? No, that wasn't stricken. That was something else that was stricken. Wasn't this from a declaration that he tried to file after the notice of appeal? Exactly. It was a declaration that was in. It was a declaration filed with the notice of appeal. And it was stricken because it was too late in the process. I don't believe it was ever stricken. There was something else that was stricken, but that wasn't it. You're saying here that you said before us. I thought before us you said, no, that was stricken. No, Your Honor. I think if I remember oral argument correctly, I think I said that it did take place after the motion for summary judgment was decided. But it is in the record. I mean, it is part of the declaration of the notice. Well, if it's been stricken, it's not in the record. So if we check the record and we see that there was an order striking the declaration, then we should ignore what you just said, should we not? Just the magistrate judge struck it. That's right here. Because it was more than 14 days beyond the time when the district court judge had entered the judgment. And so there's an order on the record striking that declaration. Your Honor, I do not recall that. I do not recall that being stricken. And ultimately, the appeal, the notice of appeal was found to be timely by this court. So you would agree that if Judge Okuda is correct and the magistrate judge struck it, we can't consider it? Oh, certainly. If it's not part of the record, then the court would not need to consider it. But, again, it's also – but, Your Honor, I'm not really proffering that because it is a little unclear in the record. Well, you're making an argument based on the assumption that those facts are in the record, and now you're backpedaling and saying, well, maybe if they're not in the record, then I guess we can't make that argument. Your Honor, I believe that they – I do not recall them being stricken. So based on that whole – In the cases, the concept of available seems – certainly our cases seem to speak in terms of practicalities. Yes. Does the record indicate whether Mr. Albino speaks any English at all? He speaks almost no English. And particularly at that point, he spoke no English. And the complaint box, whatever was in there, in what language are those complaint forms? The – there is no indication of what the complaint forms are in. And, again, they had to be requested. The same with the complaint box. I understand the point. Now, what I'm trying to get at is whether they were, in quotes, available. Is there anything in the record that indicates anything about Mr. Albino's intelligence level, education, and anything like that that would help us understand the availability concept? Yes. The record seems to imply that he was not particularly – Wise or – No, it does not – there is nothing specifically about what his education level was. But if you look at his writing in the two interviews – If you look at my writing, it doesn't look too good either. He did not. And I would like to reserve the rest of my time for rebuttal. Okay. Thank you, Your Honor. Thank you, Your Honor. We'll hear from Khalil. Your Honors, my name is James Jardine, Counsel for the Appellee, Lee Baca. What we're really talking about here today is what does available mean in the context of this statute? I mean, various circuits have given us various interpretations. We've had a lot of terms that have been tossed about, whether it's unknowable, whether it's known. But I think we serve ourselves and the folks who are going to be listening to us today the best if we just stick with the text. And available, I think, as the Booth Court has defined it, has two concepts, I think one of which we're really talking about here today. The first is the concept that there has to be some type of remedy that's capable of providing relief. And I don't think that's really in dispute here today. The Department does have a grievance procedure. The second term that the Booth Court mentioned, talking about available, is accessibility, whether or not the grievance. Before we get to that, Counsel. Yes, Your Honor. Do you agree with opposing counsel that the grievance procedure is contained in an employer manual that is not available to anybody but people that are employed there? That's correct. The Manual of Policies and Procedures, that is an internal document for the employee. So the procedures, such as they are, are not available generally to prisoners, in the sense that they can't get a copy of it. I will concede that that is correct. I don't concede that they are not available. No, I understand your legal concept. But the physical manual is not available to prisoners. That's correct. So what we're really talking about here is availability in the sense that a prisoner needs to speak to someone who is familiar with what is in the manual in order to know what to do. Is that a fair statement? I don't believe that's correct, Your Honor. Okay, correct me. Help me. Your Honor, what isn't disputed is the fact that we have complaint boxes. There's a reason that the Declaration calls them complaint boxes and not just boxes. The place where I play golf, there's a complaint box at the top of a very tall tree, and it says complaint. Nobody's ever put one there. I understand, Your Honor, but these complaint boxes are in public areas that every prisoner routinely has access to when they go to the clinic. And is there a description of what's on the outside of the box? Not in the record, Your Honor. All right, well then, what is in the record? Other than that there are boxes without any labels on them. There are boxes and there are forms. Tell me about the forms. We just heard, and I think I've got it right from what's in the record, that the forms are not out in public places and are available only on request. Is that right? That is incorrect. Incorrect. How do I know that? What the record states, what the Declaration states, is that every housing unit has to have a box in a publicly available area and that inmates have to have unrestricted access to the forms. It has to have? That sounds prescriptive rather than descriptive. There's lots of things that should be allowed. People should drive on the freeway at 55 miles an hour, but we often find ourselves on the freeway and people don't. So when you say it has to have, that doesn't help much. I think the question I heard from Judge Fletcher was, what do we have in the record as to what actually is? We have a declaration from a deputy. Let me read to you paragraph 3 of that declaration about forms. Inmate complaint forms are available at various locations within the facility, and an adequate supply is maintained and available for any inmate who requests them. That sounds to me as though they're available upon request. I think that there are two components to that sentence, Your Honor. The first is that they're maintained at several locations. In fact, they're maintained with the boxes. The second is that they can be requested. Excuse me, it does not say maintained with the boxes. It says at various locations. And that they can also be requested. It doesn't say at all. Various locations doesn't help you because various locations could be in the warden's office. It could be outside the visitor's area. So various locations just doesn't get you there. We have more than that here, Your Honor. Why don't you tell us the best thing you have. And point to where it is in the record because one of the issues that I have with this is that summary judgment was granted and we're supposed to view the facts in the lightness favor to the plaintiff in this case. And so I'm trying to find any facts that really support your position that these things were actually available to the inmates. So if you could just point to me or tell me how he could have gotten this, Your Honor, he could have known about the grievance procedure by seeing the complaint boxes. And you said there's nothing on the advertising box. Is this your best thing? I asked you for the best thing. Your Honor. What is the best thing you have that's actually in the record, that's in the record that says here is where he would have gone and found the complaint form? I've just given it to you. Then you lose. That's under the case. I don't think there's any reason for you to keep talking. Your Honor, I think we're confusing two concepts here. I don't think I am. Understood, Your Honor. Maybe you are. I don't think I am. The question is you want to say he could have got the complaint form and saying it's available in various places in the jail doesn't get you there. What you have to have is somebody saying, Look, there was a place where he could have gone and seen forms and picked one up to use. Do you have something like that in the record? Not beyond what I've told you. Where does it say the complaint must be submitted in writing? I'm a little uncertain on the section that says, I guess it's section 5-12, sort of 10.00. It says complaints need not be written on a specified form, which could mean that they can be written on anything or that they need not be written at all. Does it say somewhere else that the complaints must be in writing? No, Your Honor. I believe that states the requirement that it be in writing. And I think the inference there is that if an inmate doesn't have access to a complaint form, an inmate could take a napkin and write out a complaint and drop it in the box, and that would be sufficient to comply with the grievance procedure. Can he just telegogue? I'm sorry, Your Honor? Can he just telegogue? No, he can't. But the way it's written here doesn't really say that. I mean, it's open for interpretation. We don't believe it is, Your Honor. I understand your point. And were the boxes, you said that he could have just put it in a box. There's some comment that was just made that he may not speak very much English. Was it in Spanish? Or is it in the record whether it was in Spanish? It's not in the record, Your Honor. Your Honor, I think, understanding you disagree, Your Honor, I think we're confusing two concepts here. I think we're confusing a question of access to the courts with the PLRA. And there's been no claim here that Mr. Albino was unable to present his claim in court. We had some discussion in the prior hearing as to whether or not it's presumed that Mr. Albino knows about the existence. I think we're talking about available and what available means. And you're going to tell us available means he had a procedure both that was effective to achieve his goals of getting redress and also available in the sense that he could have found it. He could have found it. And I'm still stuck on that. I don't know what you're talking about access to the courts. I'm still stuck on where is the evidence that he could have found it. Where is that? Your Honor, it's presumed that Mr. Albino knows that the PLRA exists. Presumed by whom? By the force of law. Oh, that he knows that the requirement exists. That part. That an institution can have a procedure. But the institution does not have to. Jails don't have to have a procedure. They don't have to, but they can. And if he knows that. If he knows what? If he knows that the PLRA exists and that he can be required to comply with the procedure before he can proceed in court, that's sufficient to trigger an obligation on his part to ask about the procedure. And you're burdened with proof to show that he does know. That he does know. Or should know. About the PLRA? Yeah, exactly. And the grievance procedure. It's an affirmative defense, is it not? I don't believe it's my burden to show that he knows that the PLRA exists. It may be. But in terms of this procedure, isn't it your burden to show that he knew that there was a procedure available? No, it's not. There's nothing about knowledge in the PLRA. What I am required to show is that I have a procedure that's effective and a procedure that's accessible. That's not measured in terms of how nobody knows about it. And you just ran away from the words with which you began. The word is available. Yeah. Understood. And so the remedies have to be available. There are some absurd cases, I think, that say if it's unknowable, unknown and unknowable, then it's not available. And so I guess one question would be, is the remedy, the procedure, the grievance procedure that this prison has, unknowable to an ordinary prisoner like Mr. Albino? No, it's not. How is it knowable? It's knowable from the existence of the boxes throughout the facility and the complaint forms. Boxes are unlabeled, you say? Well, the fact that there are boxes in this facility is enough to tell him that there is a complaint procedure. Your Honor, there's no evidence in the record that says the boxes are unlabeled. Well, I asked you what the boxes said, and you said there was nothing on the outside as far as the record goes. I said that the record does not indicate. I didn't say that they were unlabeled. What we can go by is that there are boxes which say either nothing or something, but we don't know what they say. And it's clearly in the interest of your client in providing a declaration and describing those boxes. If there was a label on the outside that said, complaint box, file your mandatory complaint here, it's in the interest of the deputy to say that. He didn't say it. Now, people make mistakes, people don't say things that would have been their advantage to say and so on, but there's nothing in the record from the person who's in a position to know to state that fact that would be favorable to your position. I want to follow up with what Judge McGeehan mentioned a minute ago, and that is that there's nothing in the regulation, which Mr. Albino would not have had access to, that says that a complaint has to be in writing. Did I understand that correctly? That's what your colleague said. No, but I thought you agreed with her. No, I don't agree with that. Is there something in the regulation that says that a complaint has to be in writing? Yes. Can you point me to that, please? I believe the sentence that... Well, I wasn't on the same page. Why don't you tell us where it is? I wasn't sure where Judge McGeehan was, so you're relying on a... Yeah, well, where is it? Where is it? Your Honor, I believe it's at Supplemental Excerpt of Record 47. What does it say? Exactly. Supplemental Excerpt 47. 48, 47. Go ahead. Your Honor, it indicates there that an inmate may fill out a form and drop it in the box, or they may submit their complaint on any other type of paper. Can you read me the precise language? I don't have that right in front of me. I apologize. Section 5. Can I approach? Yeah, absolutely. You must. You should bring your excerpts directly to the court, Your Honor. You came without your excerpts? I just brought my outlines, Your Honor. That was a bad mistake. No, I'm not going to lie. You know, you can't really have notice of things unless you have them in writing. But now you do. So what does it say? Are you talking about the line under the unit commander's responsibilities that the inmates are permitted to report a complaint whether or not it is written on the specified form? That's correct. As implying that it must be written, because it must be written but doesn't necessarily need to be on the specified form. Yes, it was the same language that Judge Margia was referring to. Section 5, and I don't know what page exactly that you're looking on there, but hyphen 12 slash 010.00. And what I'd written down, it says, complaints need not be written on a specified form. And my question was, you know, that could mean either that they can be written on anything or they need not be written at all. It seems like that's a possible interpretation. You're telling me no, and I was just trying to figure out why you say no and why you think it's clear. Our reading of the manual is that the indication here is it need not be on a form. If there is no form present, if an inmate just has a blank piece of paper, they can fill that out and drop that in the box. But following up on what Judge Margia said, at least an implication doesn't have to be in writing at all. And if that's the case, wouldn't the very complaint that Mr. Albino made on at least two, probably three occasions after he'd been raped, wouldn't that not constitute a complaint pursuant to the grieving procedure? If that were the case, that's correct. You've got the language right in front of you. I do. So why don't you give us a citation, what you're relying on so that we have it. What are you relying on? Give us a section. I don't have it right in front of me, so I can't help you here. It's Supplemental Excerpt of Record, page 47. It's the language that we just read. It's a section of your, isn't it a particular section? It is, yes. What's the section? It's section 5-12 slash 010.00. Which paragraph are you referring to? I am referring to the second full paragraph. Under Unit Commander's Responsibility? Yes, Your Honor. And that second to the last sentence is the one you're relying on? That's correct. Once you read it, it's just silent, I don't have it in front of me. I can't follow along. All inmates are permitted to report a complaint, whether or not it is written on the specified form. Wow, that sounds to me like report a complaint means you can tell one of the guards. That's not how the system is enforced, Your Honor. And that's not what was intended by the language. Well, we can change that, can't we? Yes, you can. Well, and this I have to say, this is in the secret manual. I mean, this is in the manual that is not distributed to the prisoners. Can I have my excerpt back? Next time you'll bring it to court? I want to ask a bigger question. So the guards, in this particular case, he was complaining to the guards that he should be in this segregated unit. And the guards were telling him, well, you need to talk to this attorney, and they didn't tell him, well, you have to put a complaint in the box. They were doing all of that. But in stepping back from this, isn't it overall in the interest of the Sheriff's Department, in its capacity as running the jails, to make these grievance procedures known so that they don't have a lot of lawsuits, so that they can resolve some of these grievances internally? And that's also consistent with the purposes of the PRLA. So it seems like the overall Department's interest and the policy behind the PRLA's exhaustion requirement was being subverted by some of these guards who, you know, they had access to the employer's manual. They could have told them to put something in the box over there that's unlabeled, and they didn't. And it seems to me like you're arguing contrary to the Department's overall interest in not having to litigate in federal court all these claims. Recognizing your point, Your Honor, I think there is an interest in requiring that complaints be submitted in writing, which also furthers the PLRA, because one of the purposes of the PLRA is to establish a useful record of how a grievance was addressed below. But isn't it also in their interest, consistent with that, isn't it also in their interest when they're seeing that someone is complaining to tell them, put it in writing, put it in that box over there? Whether or not it's in their interest to tell someone to submit a complaint, I think, is... You see, what I'm suggesting is that it's in the Department's interest, but it probably isn't in the individual guard's interest, about whom the complaint might be. Understood, Your Honor. And I think, again, if we go back to the notion that the complaints must be submitted in writing, I think that alleviates that concern, because then it's not being submitted orally to someone whose own self-interest may be competing with the interest of the institution. That's the whole problem at the root of this lawsuit, is that the self-interest of the guards was different from that of the PLRA or the Department. They didn't want a complaint to be filed, and so they didn't tell him that there was a way to actually get his complaint in front of people above the individual guards. And the question we're confronted there with is whether or not that constitutes affirmatively interfering with Mr. Alvino's ability to file a complaint. I'm just wondering if Sheriff Baca, who actually is my neighbor down the street in San Marino, would approve of this, the guards not giving them the internal grievance forms. I can't answer that question, Your Honor. Could I get that? Well, he runs down the street every morning, so. The question of what's available and whether it's unknowable or not. So if you're saying it's not unknowable because of the complaint boxes, the record is silent about what the complaint boxes look like, and we have to take all of the factual inference in the light most favorable to Mr. Alvino, why wouldn't we conclude that the complaint procedure is unknowable if the only way it is knowable is through unmarked boxes? Given the confines of your hypothetical, I don't think I could answer contrary to what you stated. I don't think that's the record we have in front of us today, though. Is there any other way that the procedure is knowable to a prisoner, an inmate, in the Sheriff Alvino situation? Your Honor, contrary to what my colleague had represented, we do have an orientation that's given. There's no evidence in the record that says that we don't, and it's not appropriate for me to talk about the content. Why don't you put that in the declaration, that you have an orientation and that you inform all prisoners?  Why wouldn't you put it in the declaration that, you know, a picture of the box, or he was in this housing and here was the box during the time that he was there? I mean, I don't understand why the record is the way it is. There's a notation in your June 2006 report of the assault on Mr. Alvino that in county jail, most dorms and modules have representative inmates who reiterate the jail rules to the newly housed inmates. And I'm just trying to figure out the significance of that and whether that means it's your policy to rely on inmates to tell other inmates things like how to manage the jail administrative grievance process. We do rely upon, we call them trustees. They do provide a lot of information about particular jail procedures, common things. That's your method? I'm not saying that's my method, Your Honor. I think one thing that it's important to point out to the panel is that the notion that the department is conducting its operations in a fashion that prevents inmates from understanding what their rights are or how they can complain about problems, that's not accurate. There's a reported decision in the Ninth Circuit from the Central District. It's called Rutherford v. Baca. For over 20 years, our jails have been monitored by the ACLU. We are required by court order to post signs throughout the jails which indicates how inmates can contact the ACLU, that they can contact the ACLU to seek assistance. So maybe you're on contempt in addition to everything else. Maybe your clients have committed contempt. You're on the court order to do certain things and you don't. I mean, again, it's sort of like should. You know, we should drive a certain speed. So all you're telling us, if you're now on the court order, that doesn't tell us that you're in fact complying with the court order, does it? In fact, he didn't send them to the ACLU. He sent them to his own lawyer. And if he'd gone to the ACLU, would you be arguing he's failing to exhaust? I'm actually more surprised about something else. I mean, here's a prisoner who gets physically and sexually assaulted twice. The guards obviously know about it because he's given assistance. He complains about it. And put aside the whole question of whether he followed procedures or whether he followed everything else. Why don't the guards have a responsibility at that point to put him in protective custody? I mean, they know. It's not one of those situations where he is complaining about something that the prison doesn't know about. They know that he's in danger. They know that he's been subject to abuse, that he's been physically attacked. Pretty serious stuff. It's not like that happened in the real world. Within the sheriff's territory, the sheriff would be down there with squad cars and ambulances, and somebody would be taken to jail, right, if they know who they assaulted. Here it sounds like, oh, well, somebody got assaulted. Nothing happens. There's no attempt to put him in segregation, to protect the custody or anything like that. Nothing happens. I don't think that's correct. We did two very specific things each time that he was attacked. We provided him medical care. We transferred him away from the inmates who had attacked him so that he wouldn't be subjected to them again. We performed an investigation. Mr. Albino declined to press charges. Mr. Albino's narrative is very different from the narrative provided in the affidavits or declarations provided by the deputies working in the jail. Mr. Albino's narrative is that he refused to reveal the nature of what he had done and that the guards set him up. The guards, according to Mr. Albino's narrative, told the inmates that he had raped a minor, which is pretty much a guarantee that then Mr. Albino will be attacked. So according to Mr. Albino's narrative, which the truth of it, I don't know, but this is what he says, he was set up by the guards, a pretty nasty setup. He then complains to the guards, and the guards, for some reason, don't tell him, well, you know, there's a complaint for him. Here it is. Fill it out. Instead, they say go talk to his lawyer, which he does. The lawyer goes to court several times in order to get out of a medical attention, and now you're arguing that he failed to exhaust an available procedure for a complaint. I mean, that's the story he tells. Yes, Your Honor, it is the story that he tells. And there's nothing to contradict that story that he tells. It may or may not be true, but we're at summary judgment. That's an interesting point, Your Honor, because there's a question as to what the appropriate procedure is to handle an exhaustion issue. I mean, the district court below treated it as summary judgment, but the law of this circuit says that it's an unenumerated Rule 12 motion, which is a different standard to be applied to the district judge's factual findings. I believe that is the appropriate procedure. There's nothing in this circuit to suggest otherwise. Different and more difficult, or different and easier? Different doesn't help, Your Honor. It has to be different and more or less. I can't see how you can, on an unenumerated Rule 12 motion, have a more general standard than on the summary judgment. The district judge's factual findings are reviewed for clear error, as opposed to de novo by this panel. But ultimately, counsel, what I'm struggling with is, in answer to Judge Ikuda's question, you responded about the summary judgment, about how we treat the facts, as you were the moving party. And ultimately, it seems like, if I understand it correctly, you get back to that there were these boxes there with the complaint forms in them. I think that's your answer. And yet, under Brown, when we construe exhaustion administrative remedies, we have to find out whether administrative remedies were available, in quotes, as a practical matter, end of quote. Just in common sense. I mean, you're obviously an intelligent guy. Does it make any sense at all to say that a prisoner of this nature, in these circumstances, could be expected to know that there is, in fact, a procedure in a secret manual, and that he can have access to it through some boxes that have complaint forms in them, in English, I assume, that are not marked? Is that practical? Yes, Your Honor, it is. You think so? I do. God help you if you're ever in the jail. I've been there several times to visit it, Your Honor. If summary judgment is not the correct standard, which is what the panel found, and we're on an unenumerated 12B, that's like a jurisdictional motion, so we don't have a presumption of truthfulness for either side, are there factual issues that the district court should have resolved that are necessary, or do you think that we can do what the district court judged to do, which is to take all facts in favor of Mr. Albino? I believe that the finding that has to be made, if it's an unenumerated Rule 12 motion, is whether or not the procedure was available, whether or not the county met that burden. And I think when we look at the nature of the evidence that Mr. Albino offered in response, I think that that finding is supported by the record. Mr. Albino, he does not give us objective evidence. All of his evidence is directed towards what he knew. I mean, for example, when he says that he spoke with his attorney, he never tells us that he asked his attorney, I want to contest my classification. He just says, my attorney never told me anything about a grievance procedure. And the point at which we get this information from Mr. Albino, the story changes every time. We have one story in the complaint. We have one story in the First Amendment complaint. We have another story in his deposition. We have yet another story in his declaration submitted in opposition to summary judgment. And then we have a fifth story when we get his objection to the magistrate's report. And in light of that record, the district judge's findings, they were proper. This is not clear error. The finding that this grievance procedure was available to Mr. Albino, it's a proper finding on the record before the district court. So is your contention that at page 6, and I don't have an excerpt of record, but it's the magistrate judge's report and recommendation that Judge Fees adopted at line 4 where it says the court finds based upon the submission of the parties that the Los Angeles County Jail had an accessible administrative procedure for seeking redress of grievances at the time of the incident. And then he goes on to talk about the supporting declaration of Deputy Jason Ford in the custody division manual that that's a finding of fact on an unenumerated Rule 12 motion to which we can overturn only if we find it to be clear error. That's correct, Your Honor. I have to say I've never heard of an unenumerated Rule 12 motion until I ran into this case. And it just strikes me as nuts. You keep talking also about summary judgment at the same time we're talking about an unenumerated Rule 12 motion. I think I can explain that, Your Honor. What happened is this motion was not brought solely to address exhaustion. It was also brought as an attack on the merits of Mr. Albino's claim, which is a motion for summary judgment. No question that that was the proper procedural vehicle for the attacks on the merits. We've combined them into one motion. But it's appropriate for the district court, if an administrative exhaustion issue is presented in the context of a summary judgment, the proper thing to do is to treat it as an unenumerated Rule 12 motion. Tell me why it makes sense to treat this as something other than a summary judgment when the key issues here surrounding exhaustion are factual issues that are disputed and why should we not treat it as an ordinary summary judgment motion subject to ordinary rules of evidence, subject to presumptions and so on? I don't get it. I understand your question, and I think there's a very good reason. It's because exhaustion is not part of the merits of the claim. I understand that, but there are factual questions that go to whether exhaustion has been accomplished. The magistrate treated it as a 56 motion, a summary judgment. He did, Your Honor. So how can we review what the court below did by a standard different that it itself thought it was applying? Well, Your Honor, this court can affirm or reverse on any appropriate ground in the record. I understand, but what you're saying is we have to give reference to findings made by the court below. But if the court below is applying a standard that does not call for it to make findings, how can we affirm something that the court below didn't think it was doing? Well, if we look at the fashion in which the court below approached how it made its analysis, I do believe that the order below can be affirmed under either a Rule 12 standard, an enumerated Rule 12 or a motion for summary judgment, Rule 56, because what the district court properly did is it refused to consider contradictory declarations that were offered in support of summary judgment where they contradicted earlier sworn deposition testimony. So we get to the same place. I'm reasonably sure we have an opinion, at least one opinion, because I don't know where I even went, saying when there are contradictory statements by a party, the district court can not resolve a summary judgment by the same party. Sometimes parties say things are inconsistent, and inconsistencies simply go to the weight of any of the allegations at trial, but they don't go to the district court can't resolve which of the two inconsistent statements. Your Honor, I believe it depends in what form the statements were offered. There is a preference for statements made by a deposition, oral testimony, where you have a subsequent declaration that attempts to contradict that. That can be disregarded. I'm reasonably sure the case I have in mind involved a declaration versus a deposition. We said, can't do it. Anyway, thank you. You're over your time. Thank you, Your Honor. I believe you had a better part of a minute. How about two minutes altogether? Let's see if we can. Your Honor, there is actually only one thing that I want to point out. I just wanted to— Unless you're going to get away with just one thing. With this battle. Go ahead. With respect to orientation, there's nothing in the record that says that the jail has any kind of an orientation procedure. And on pages 74, 85, 87, and 89 of the excerpts of the record, Mr. Albino Avers said he was never given an orientation procedure of any kind, an orientation of any kind, and certainly not anything about the grievance procedure. And with that, I would submit, unless there's something else at the question. Do you have a view on the standard, the Rule 56 versus the unenumerated 12? I would agree with— What's your position as to what standard we apply? I would agree with the court that the original motion was a motion for summary judgment, and that was the procedure that the court applied below. And so I would think that that would be the proper procedure on appeal as well. Well, if we decide it was error, then would we go back to this, whatever this unenumerated Rule 12 motion is? Because the standard seems to be different if that's the case. Well, the facts in this case are really not disputed. The core facts, certainly about the request forms and the complaint box, that there was no orientation provided, those really aren't disputed. We all agree that that's what happened. So I think a reversal is most appropriate. You haven't really answered my question. I thought my question was, would you agree that there's a different standard if it is, in fact, an unenumerated Rule 12 motion and a factual finding by the magistrate that we're reviewing? A motion for summary judgment is— No, no, no, counsel, you're not answering my question. My question was, assume the district court erred in labeling it a summary judgment proceeding, and in fact what this was was an unenumerated Rule 12 motion and a ruling on the facts for screening purposes to decide exhaustion under the PLRA, which is what I understand to be the purpose of unenumerated Rule 12 jurisprudence. The summary judgment and unenumerated 12b6 do have different standards. They do. They do. The summary judgment is de novo. The 12b6 is a split de novo in part and clear error for any factual finding. So if that portion that I read to Mr. Jardine was, in fact, a factual finding, we'd have to find it clearly erroneous to overturn it, wouldn't we? I believe that below the district court found that there were no factual disputes. Well, that's not the same thing as saying that there weren't factual findings. That could be read to mean, and you don't dispute that fact. Well, the district court itself stated that it was not making factual findings. Well, since what counsel says in oral argument can also be part of the record, Mr. Jardine indicated, if I understood him correctly, that the sum and substance of this case is that since there is a manual, admittedly not available to Mr. Alpino, that all Sheriff Baca has to do is to show that there are some complaint forms available in some way. They're unmarked. And it sounds like he's prepared to rest his case on that point, that that necessarily shows that they were available. Are you prepared to rest your case on that same point? Well, I would disagree. I don't think there are any cases, certainly not the cases in this circuit. I'm just asking you for purposes of this case. He says he's prepared to rest his case on those facts. If we just focus on those facts, are you prepared to rest your case on the same thing as to whether that is sufficiently available under the PLRA to carry the day for you? I think that those facts show that the grievance procedure is not available within the meaning of the PLRA. But you are prepared to rest on it? To the extent, yes, that it shows that. But there are so many more facts in favor of my client that I don't know. I think we know. Thank you very much. Case is now go stand submitted. We are adjourned.
judges: Kozinski, Reinhardt, Wardlaw, Fletcher, Tallman, Bybee, Smith, Ikuta, Smith, Murguia, Watford